Filed 7/6/22  In re R.T. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re R.T. et al., Persons Coming Under the Juvenile Court Law. | B315541 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP05312A-B) |
| Plaintiff and Respondent, | |
| v. | |
| ROBERTA H. et al., | |
| Defendants and Appellants. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County.  Hernán D. Vera, Judge.  Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant Roberta H.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant Eric. B.

Michelle Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant Shawn T.

Rodrigo A. Castro-Silva and Dawyn R. Harrison, County Counsels, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Roberta H. (Mother), mother of minors R.T. and A.B. (each, a Child, and together, Children); Shawn T. (Father T.), presumed father of R.T.; and Eric B. (Father B.), presumed father of A.B.; each appeal from the juvenile court's findings and orders terminating their parental rights. Father B. also appeals from the denial of a modification petition to reinstate reunification services. We refer to Father T. and Father B. together as "Fathers" and, collectively with Mother, as "Parents."

Parents' sole asserted basis for reversal is that the Los Angeles County Department of Children and Family Services (DCFS) failed to ask extended family members as required by section 224.2, subdivision (b) of the Welfare and Institutions Code,[1] whether either Child is an "Indian child" within the meaning of section 1903 of the federal Indian Child Welfare Act, 25 U.S.C. Sec. 1901 et seq. (ICWA).

We find that the juvenile court erred in determining that the ICWA did not apply without evidence that DCFS questioned extended family despite contact with multiple extended family members. However, we conclude the error was harmless because all biological parents participated in the proceedings below and

_____

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

2

each repeatedly disclaimed Indian ancestry. Under these circumstances, further inquiry of extended family members is not likely to bear meaningfully upon whether either Child is an Indian child. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

These proceedings commenced in 2019 after police found one-month-old A.B. and two-year-old R.T. in the care of an unrelated probationer in a hotel room where narcotics were easily accessible to the Children. The police notified DCFS. Later that evening, Mother told a child social worker (the CSW) that Father B. was the father of A.B. and Father T. was the father of R.T.

DCFS proceeded to investigate the Children's family situation. In the course of this investigation, the CSW communicated with all three Parents as well as members of their respective extended families. Although the CSW completed ICWA-010(A) forms indicating that each Parent had "denied Native American Heritage," there is no record that she inquired as to such heritage with any Parent's extended family members.

Based on its investigation, DCFS filed a failure to protect petition against each of the parents and obtained removal orders. At the detention hearing, DCFS presented ICWA-020 forms signed by each Parent indicating "I have no Indian ancestry as far as I know." On this basis, the juvenile court found no reason to know that any Child was an Indian child and did not order notice to any tribe or the Bureau of Indian Affairs. After considering all evidence at the detention hearing, the court sustained the petitions, confirmed its initial removal orders, and ordered reunification and other services and visitation.

The services were ineffective to address the circumstances that led to the Children's initial removal and continued custody.

3

As a result, the juvenile court terminated reunification services in February 2021. On October 1, 2021, the court denied Father B.'s modification petition to reinstate unification services and terminated the Parents' parental rights. This appeal followed.

## DISCUSSION

### A.    Overview of the ICWA Duty of Inquiry

The ICWA contains unique provisions governing court proceedings concerning custody of American Indian children. (See generally 25 U.S.C. §§ 1911–1923.) Thus, it is incumbent upon a state court administering a proceeding where child custody is at issue to inquire whether the subject child is an Indian child. The scope of the duty on the court, as well as certain participants in the proceeding, is defined by reference to federal regulations and related state law. (See, e.g., 25 C.F.R. § 23.107; § 224.2; Cal. Rules of Court, rule 5.481.)

We describe the duty of inquiry as having three "phases." The first phase— "initial inquiry"—applies in every case. In general terms, initial inquiry requires the court and the county welfare department (here, DCFS) to ask certain persons (which we detail further below) about the child's possible Indian ancestry. (See § 224.2, subds. (a), (b), (c); *In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

Where "initial inquiry" gives "reason to believe" the child is an Indian child, but there is insufficient information to make a definitive determination, the second phase—"further inquiry"—comes into play. (§ 224.2, subd. (e)(2).) Further inquiry requires more robust investigation into possible Indian ancestry. (See *ibid.*; *In re D.F.*, *supra*, 55 Cal.App.5th at p. 566.)

Where, as a result of further inquiry or otherwise, the juvenile court has "reason to know" a child is an Indian child, the

4

third phase is triggered.  This phase requires that notice pursuant to ICWA be sent to the pertinent tribe(s) so as to facilitate their participation in the proceedings.  (§ 224.3, subd. (a)(1); *In re D.F.*, *supra*, 55 Cal.App.5th at p. 568.)

In this case, the juvenile court determined that the ICWA was inapplicable based on phase one initial inquiry evidence only.  Specifically, the court relied on the Parents' signed ICWA-020 forms reflecting no knowledge of Indian ancestry and had before it the petition reflecting that all Parents had denied Indian ancestry to the CSW.  (See § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a)(2)(C).)  As far as we have been shown, the court relied on no other evidence in satisfying itself that the ICWA did not apply.

## B. Due to Inadequacies in the Initial Inquiry, the Trial Court Erred in Finding the ICWA Inapplicable

The juvenile court's finding that ICWA does not apply to the Children implies that (a) neither DCFS nor the court had a reason to know or believe the Children were Indian children; and (b) DCFS fulfilled its duty of inquiry.  (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)  The first question we must answer is whether the implied finding that DCFS fulfilled its duty of inquiry constitutes error.  We answer that question in the affirmative.

" ' "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order.  [Citations.]  We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in

5

favor of affirmance." ' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

When, as here, DCFS takes children into custody, it is required to ask "extended family members," among others, "whether the child is, or may be, an Indian child . . . ."[2] (§ 224.2, subd. (b).) This is a requirement imposed only by state law and not by federal law. (*In re S.S.* (2022) 75 Cal.App.5th 575, 581.)

Here, though the CSW asked the Parents about Indian heritage, the Parents complain on appeal that she failed to ask the same of the Parents' extended family members with whom the CSW had contact. DCFS does not dispute this contention and we are directed to no record evidence that DCFS made any such inquiry or that the juvenile court inquired into whether DCFS made any such inquiry.

In the absence of *any* evidence DCFS complied with its section 224.2, subdivision (b), duty to inquire with extended family members, the juvenile court's implied finding that DCFS fulfilled its duty of inquiry constitutes error. (See *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 [finding error where evidence showed DCFS had contact with maternal aunt and maternal grandfather but failed to inquire of them regarding Indian ancestry].) However, because the error is one of state law, we can reverse only if it was prejudicial. (*In re Benjamin M.* (2021)

---

[2] Contrary to Father B.'s assertion that "[t]he court . . . failed to inquire of available relatives . . . ," no such duty is imposed on the court. Section 224.2, subdivision (b) imposes the extended family inquiry duty only on, in relevant part, "the county welfare department."

6

70 Cal.App.5th 735, 742 (*Benjamin M.*) [citing Cal. Const., art. VI, § 13].)

**C.      No Prejudice Is Shown**

Appellate courts are divided on what showing of prejudice warrants reversal where error is found due to noncompliance with section 224.2's extended family inquiry requirement.

In California, prejudicial error is ordinarily found only if, " 'after an examination of the entire cause, including the evidence . . . ,' " we are "of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

"Although an appellant ordinarily has the burden of establishing prejudice [citation], a parent's ability to make this showing based upon the record in failure-to-inquire cases can be problematic . . . ." (*In re S.S., supra,* 75 Cal.App.5th at p. 581.) This is because it is the responsibility of the county welfare department to make and document its inquiries.

"Some courts have addressed this problem by requiring an appellant who asserts a breach of the duty of inquiry to, at a minimum, make an offer of proof or other affirmative assertion of Indian heritage on appeal." (*In re S.S., supra,* 75 Cal.App.5th at pp. 581–582.) Others have excused such a showing, effectively treating failure-to-inquire as error per se. (See, e.g., *In re Y.W.* (2021) 70 Cal.App.5th 542, 556; *In re J.C.* (2022) 77 Cal.App.5th 70, 80.) The Fourth Appellate District in *Benjamin M., supra,* 70 Cal.App.5th 735, utilized a third approach, concluding that "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was

7

readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id*. at p. 744.)

We decline to follow the "error per se" line of cases such as *In re J.C., supra*, 77 Cal.App.5th 70, whereby a failure to inquire is never harmless error. There are real and serious costs, both monetary and emotional, if courts blindly delay finalizing the placement of a child in every case where any extended family was not questioned, on the off-chance they might disagree with the parents' representation that the child has no Indian heritage. (See *In re A.C.* (2022) 75 Cal.App.5th 1009, 1018–1024 (conc. & dis. opn. of Crandall, J.); *In re H.V.* (2022) 75 Cal.App.5th 433, 439–442 (dis. opn. of Baker, Acting P.J.).)

Under either of the other two lines of cases, the juvenile court's error in not requiring DCFS to conduct further inquiry was harmless error. On the record before us, further inquiry is unlikely to bear meaningfully upon whether the Children are Indian children. The biological parents of each Child have appeared and unequivocally denied knowledge of any Indian ancestry. No one has suggested there is any reason to believe the Children might have Indian ancestry. As such, this case is unlike *Benjamin M*. There, the father was absent from the proceedings and no person from the father's side of the family had been asked about Indian ancestry. The court conditionally reversed to permit the social services agency to inquire with the father's brother, who was accessible to the agency. With information about ancestry on the father's side "missing," inquiry with a person sharing the father's ancestry "would likely have shed meaningful light on whether there [wa]s reason to believe Benjamin [wa]s an Indian child." (*Benjamin M*., *supra*,

70 Cal.App.5th at p. 744.) Here, there is information bearing on whether each Child is an Indian child from both sides of such Child's family.

This case is also unlike *In re A.C.*, *supra*, 75 Cal.App.5th 1009, where remand was ordered to permit DCFS to interview available extended family members. There, the mother was the product of the foster system, calling into question whether she knew her own biological heritage. (*Id.* at p. 1017.) And, a detention report indicated a possibility that A.C. was an Indian child. (*Id.* at p. 1016.) Similar facts are absent from the record in this case.[3]

In short, there is nothing in the record indicating that the Parents are unaware of their ancestry and all Parents denied Indian ancestry. Nothing beyond the speculation of the Parents' appellate lawyers suggests some hypothetical possibility that R.T. or A.B. might be an Indian child. To reverse under these circumstances would be to treat the error as reversible per se. The *Benjamin M.* court rejected this approach as inconsistent with California's harmless error rules. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 743.) So do we.[4] We also note our decision is

---

[3]    Mother argues that "parents with substance abuse histories," like she has, "may not be the mo[s]t reliable reporters of events or family history." We are unpersuaded that a history of substance abuse raises doubts concerning a person's knowledge of their ancestry to the same degree that being raised by nonbiological parents does.

[4]    The dissent argues the failure to inquire of extended family members leads to a "self-fulfilling prophecy" that the courts will find no basis for overturning DCFS's conclusion that ICWA does

9

fully consistent with the recent decision by Division Two of our court in *In re Dezi C.* (2022) 79 Cal.App.5th 769.

## DISPOSITION

The juvenile court's findings and orders are affirmed.



HARUTUNIAN, J.[*]

I concur:



GRIMES, Acting P. J.

---

not apply. But it is not self-fulfilling. It is based on the complete absence of any *hint* of contrary evidence. There is no declaration from a family member saying, "I once heard my aunt say there is Indian blood in our family." There is no statement by a parent that they were mistaken in disclaiming Indian heritage. There is no declaration that any extended family member refused to informally answer the question when contacted by a parent or counsel. We have cited cases where courts did remand for further inquiry because all biological parents had not sworn under oath that they had no Indian heritage. Nothing about our decision insulates the DCFS decision from scrutiny.

[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**WILEY, J., Dissenting.**

   This is another case in which DCFS contacted extended family members but failed to ask about Indian heritage, even though asking would have been easy.  I agree with Mother that, in these cases, to affirm without this inquiry is to rely on "a self-fulfilling prophecy":  the less DCFS investigates, the more insulated from reversal will be its work.  This self-fulfilling prophecy sets an unfortunate incentive for an agency that, to judge from our current docket, routinely confesses its failings on this score.

   I lament delay in finalizing the adoption of children.  When DCFS already is interacting with extended family members, it would seem a simple matter to add this question to the agenda.


                                                    WILEY, J.